BOWES, Judge.'
Joseph Alcina appeals from a judgment dismissing his claim for total and permanent disability under the Workmen’s Compensation laws. We affirm the decision of the trial court as delineated below.
This case arises originally from a Workmen’s Compensation suit filed by Joseph Alcina against Days Inn of America, Inc. and Bellefonte Insurance Company, its alleged insurer. Plaintiff was employed by Days Inn when a soft drink vending machine fell upon him, injuring his back and leg, on or about November 15,1979. Plaintiff was paid both compensation, as well as medical expenses, until April 7,1980; plaintiff’s suit alleged total and permanent disability. Days Inn initially answered the suit, and, subsequently, filed a motion for summary judgment on the grounds that Days Inn was not the employer at the time of the accident and that Bellefonte was not the compensation carrier. The motion was granted, giving plaintiff 15 days to answer.
Alcina amended his petition, adding Hodges Ward Purrington Properties and its insurer as defendants. (Hodges Ward was alleged at the summary judgment proceedings to be the actual owner and operator of the motel in question). On January 13, 1982, the case was tried and submitted. In lieu of medical testimony, medical reports of Drs. Cerrato, Stokes, Nutnik and Wil *777 liams were introduced into evidence at trial. All were physicians to whom plaintiff was referred by the defendants, plaintiff being “in dire financial condition” and unable to secure independent medical treatment.
On February 5, 1982, the trial court issued an order for an additional medical examination because: “The court partially tried this matter and was impressed with the testimony of plaintiff and his wife,” and “the medical evidence was insufficient.” Alcina was given a choice of three doctors, of which he chose Dr. Wilmot Plo-ger. Defendant sought supervisory writs of this court at that time, contending the trial court exceeded its authority by ordering such post-trial examination, and that such would prejudice defendant by utilization of evidence which the defense could not challenge or refute. This court denied writs at that time, being of the opinion that both parties would be given the opportunity to rebut the findings of the court-appointed expert and thus there was no abuse of the trial court’s discretion. After said examination, the trial court dismissed plaintiff’s suit for lack of any medical evidence to substantiate his claim; and assessed the bill of Dr. Ploger to the defendant. Plaintiff filed a motion for appeal and defendant for a cross-appeal.
Plaintiff-appellant filed only a memorandum in this matter, contending that the final medical examination did not contain sufficient information to justify the court’s judgment, that a cursory examination was made and therefore the report, as evidence, was neither conclusive nor even preponderant. Defendant appealed the assessment of the final expert fee against it, inasmuch as defendant had opposed the examination initially, and that the additional opinion was not needed to decide this particular case. Considering the case presented before us, we must affirm the findings of the district court.
In examining the record, we note the findings of the physicians (excluding Dr. Ploger) to be more or less in ultimate accord. Dr. Cerrato, an internist, examined Mr. Alcina on the date of the accident. His report contained no diagnosis, except that all tests were negative for fracture. By November 23rd, Dr. Cerrato discharged plaintiff and advised he could return to work (it is not clear from this report whether or to what degree Mr. Alcina was experiencing pain).
On December 21, 1979, the plaintiff visited Dr. Stokes, an Orthopedic surgeon, who diagnosed a dorsol lumbar sprain, and prescribed pain medication and heat treatment. Dr. Stokes followed the patient most frequently, seeing him four times in the following four weeks. During that time, plaintiff felt alternately better and worse. By January 23, 1980, Dr. Stokes arranged for hospitalization and pelvic traction. He was discharged from the hospital on February 1st with pain medication. By February 11, Dr. Stokes advised plaintiff he could return to light duty work, no heavy lifting. On February 25th, Dr. Stokes found no further positive physical findings consistent with Mr. Alcina’s continuing complaints, and suggested he consult Dr. Joseph Nadell, a neurosurgeon (in this report Dr. Stokes also suggested that he believed Mr. Alcina may have been suffering “a psychophsiologic/conversion or exaggerated emotional reaction to genuine or self-perceived illness.”)
Dr. Nadell postulated a possible nerve irritation, possibly a herniated lumbar disc, and suggested a myelogram. The myelo-gram was performed and was negative. Dr. Stokes discharged the plaintiff on April 9, 1980, although he still complained of pain.
Dr. Merlin Wilson, an internist, meanwhile had also examined plaintiff, and diagnosed a lumbrosacral strain. He did not make a recommendation or finding of plaintiff’s disability from work.
On July 3, 1980, Dr. James Williams, an orthopedic surgeon, examined Mr. Alcina. X-rays revealed no evidence of old or recent fractures, no degenerative or arthritic changes, and no evidence of spondylolysis (this latter finding was also made by all previous physicians).
On June 17, plaintiff had been examined by Dr. Nutnik, another orthopedist, who *778 concluded the patient had a mild restriction of low back motion, and that “continued physical therapy and a program of weight loss would allow this patient to return to work as a manual laborer.” The nature of the physical therapy alluded to was not described, although we conclude that heat therapy was intended.
Above is a condensation of the medical information considered by the trial court prior to its motion for an additional examination. We do not have the benefit of the transcript including the testimony of both plaintiff and his wife, with which the court was so impressed, inasmuch as such was not designated part of the record. However, on the basis of the information we do have, we conclude that there was no manifest error by the trial court in ordering the complained-of examination.
The duty of the trial court is to render substantial justice to both parties; but in balancing of interests in a workmen’s compensation case, the legislature has traditionally placed the onus on the employer to protect the rights of the employee. Hence, Louisiana Revised Statute 23:1122 requires the employer to cause an examination of the injured employee immediately after notice of an accident; and if it is determined that the employee suffered the injury during the course and scope of his employment, the employer is obliged to pay the compensation and benefits provided under the law. Thus, if there is a dispute as to the condition of the employee, the court shall order an examination by its own appointed physician. La.R.S. 23:1123. The Fourth Circuit in Johnson v. Coppage, 360 So.2d 275 (La.App. 4th Cir.1978), said in a footnote:
If a conflict in medical evidence develops, the court, on application of either party (or presumably on its own motion under the proper circumstances), can order an examination by a physician appointed by the court, [emphasis supplied]
In the present case, we find that the most persuasive medical evidence was that of Dr. Stokes, who treated the plaintiff most often. He agreed that the plaintiff might obtain another opinion. The other physicians in the record had minimal contact of one examination each of Mr. Alcina. Doctors Wilson, Williams and Nadell made no findings of disability, one way or another. Dr. Cerrato discharged the patient within one week, long before the course of treatment was completed and some 5 months before defendant actually ceased payment of compensation. Because of this uncertainty, and dearth of actual disability ratings, we feel the circumstances justified the court’s appointment of another physician. Further, the testimony of plaintiff and his wife was evidently quite impressive. Proof of disability arising by reason of subjective pain depends to a great extent on the trial court’s evaluation of credibility of the witnesses, in light of the medical testimony. Whether said pain is substantial enough to continue to be disabling is a question for the trier of fact. Levickey v. Cargill, 405 So.2d 615 (La.App. 3rd Cir.1981). The trial judge in the case at bar obviously wished to settle the question in his own mind as the trier of fact. Therefore, he was, we believe, exercising proper judicial discretion in ordering another opinion. That he did so after the case was submitted did not negate the discretionary nature of the decision in view of the fact that either side had the opportunity to rebut the findings of the court-appointed physician, if desired, in accordance with this court’s ruling on the supervisory writs. R.S. 23:1317 does not bind the court to technical rules of evidence or procedure.
That same statute permits the court to award costs at its discretion, allowing for reasonable medical fees to be fixed in the judgment. There is no mandate on the court to assess costs, even of medical experts, upon any particular party, whether or not that party prevails. Because plaintiff was willing to rest the case on its medical evidence, and because defendant objected to another opinion as unnecessary, the trial judge evidently felt that plaintiff should not be taxed with the expert witness fees, especially since the case was tried in forma pauperis.
*779 Additionally, the Louisiana Supreme Court has clearly stated “... the Louisiana Workmen’s Compensation Statute is liberally to be construed to protect the employee from loss due to employment related injury, and to place the employer, who can more readily bear it, the risk of that loss.” Campbell v. Fidelity & Casualty Co. of N.Y., 339 So.2d 339 (La.1976).
Accordingly, under the circumstances presented here, we hold that the examination ordered by the court and the assessment of costs to the defendant was a proper exercise of the trial court’s discretion.
We further find that all the medical evidence, and particularly the report of Dr. Ploger, which essentially found nothing wrong with plaintiff and stated that there was no objective evidence on which to base a disability restriction of plaintiff’s work activity, certainly constituted good grounds for the trial judge to conclude that the preponderance of the evidence was in favor of defendants and necessitated a dismissal of plaintiff’s suit.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.